PROB 12C
(7/93)

# United States District Court
## for the
## District of Alaska

Petition for Warrant or Summons for Offender Under Supervised Release

RECEIVED
JAN 18 2007
CLERK U.S. DISTRICT COURT
ANCHORAGE, ALASKA

Name of Offender: Orenton Leon Jacquet                Case Number: A00-0020 CR (HRH)

Sentencing Judicial Officer:   H. Russel Holland, Senior U.S. District Court Judge

Date of Original Sentence:    June 9, 2000
Date of Revocation:           March 7, 2006

Original Offense:             Bank Robbery
Revocation Offenses:          Use of Controlled Substance (5), Commit another crime (DWI)

Original Sentence:            64 months jail, 3 years supervised release, $3,051 restitution
Revocation Sentence:          8 months jail, 2 years supervised release w/90 days halfway house

Date Supervision Commenced:   October 6, 2006

Asst. U.S. Attorney: Audrey Renschen        Defense Attorney: Mike Dieni

## PETITIONING THE COURT

[X] To issue a warrant
[ ] To issue a summons

The probation officer believes that the offender has violated the following condition(s) of supervised release:

| Violation Number | Nature of Noncompliance |
|---|---|
| 1 | The defendant has violated the Mandatory Condition of Supervision "The defendant shall refrain from any unlawful use of a controlled substance," in that on January 17, 2005, the defendant submitted a urine specimen, which tested positive for the presence of cocaine. The defendant admitted using cocaine. This violation is a Grade C violation. |
| 2 | The defendant has violated the Mandatory Condition of Supervision "The defendant shall not commit another federal, state, or local crime in that on January 18, 2007 the offender committed the crime of Family Violence under Alaska state law. This violation is a Grade C violation. |
| 3 | The defendant has violated the Mandatory Condition of Supervision "The defendant shall not commit another federal, state, or local crime in that on January 18, 2007 the offender committed the crime of Domestic Assault under Alaska state law. This violation is a Grade C violation. |

SCANNED

*Petition for Warrant or Summons*
*Name of Offender*     :     *Orenton Leon Jacquet*
*Case Number*          :     *A00-0020 CR (HRH)*

Submitted:

**REDACTED SIGNATURE**

Chris Liedike
U.S. Probation/Pretrial Services Officer

Approved:

**REDACTED SIGNATURE**

Eric Odegard
Supervising U.S. Probation Officer

THE COURT ORDERS

  *The WARRANT FOR ARREST be delivered to the U.S. Marshal's Service; and the petition, probation officer's declaration, and a copy of the warrant shall be sealed in the Clerk's file and disclosed only to the U.S. Attorney for their official use, until the arrest of the offender.* The petition for supervised release revocation is referred to the Magistrate Judge for initial appearance/preliminary hearing(s). The evidentiary hearing, if any, will be before the Magistrate Judge only upon consent; otherwise the evidentiary hearing will be before the undersigned District Court Judge.

[ ]    The issuance of a summons. The Petition for Supervised Release revocation is referred to the Magistrate Judge for initial appearance/preliminary hearing(s). The evidentiary hearing, if any, will be before the Magistrate Judge only upon consent; otherwise the evidentiary hearing will be before the undersigned District Court Judge.

[ ]    Other:

**REDACTED SIGNATURE**

H. Russel Holland
Senior U.S. District Court Judge

1/18/07
Date

**Supervised Release Cases:** Pursuant to 18.U.S.C. § 3401(I), the sentencing District Court may designate a Magistrate Judge to conduct hearings to modify, revoke, or terminate supervised release, including evidentiary hearings, and to submit to the Court proposed findings of facts and recommendations, including disposition recommendations.
**Probation Cases:** Pursuant to *United States v. Frank F. Colacurcio,* 84 F.3d 326, a Magistrate Judge has the authority to conduct a probation revocation hearing **only if** the following three conditions are satisfied: (1) the defendant's probation was imposed for a misdemeanor; (2) the defendant consented to trial, judgment, and sentence by a Magistrate Judge; and (3) the defendant initially was sentenced by a Magistrate Judge. Therefore, a District Court **may not** designate a Magistrate Judge to conduct revocation hearings on probation cases where a District Court was the sentencing Court.

**RECEIVED**

JAN 1 8 2007

CLERK U.S. DISTRICT COURT
ANCHORAGE ALASKA

# United States District Court
for the
## DISTRICT OF ALASKA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case Number: A00-0020 CR (HRH) |
| vs. ) | DECLARATION IN SUPPORT OF PETITION |
| ) | |
| Orenton Leon Jacquet ) | |

I, Chris Liedike, am the U.S. Probation Officer assigned to supervise the Court-ordered conditions of Supervised Release for Orenton Leon Jacquet, and in that capacity declare as follows:

On June 9, 2000, the Court sentenced the offender to 64 months imprisonment and 3 years supervised release. The offender was due to be released on the federal sentence on October 17, 2004, but had a detainer in place from the Louisiana Board of Parole, and was transferred to Louisiana to serve the remainder of a state sentence there. He was released from state custody in Louisiana on May 6, 2005, and attempted to return to Alaska for his term of supervised release, however, the Parole Authorities in Louisiana would not allow him to leave that state until the expiration of his state parole term (i.e. November 13, 2005). The U.S. Probation Office, Eastern District of Louisiana agreed to supervise the offender for this Court until that time.

On July 28, 2005 and again on August 11, 2005, as part of his federal supervision in Louisiana, the offender submitted urine samples, which tested positive for the presence of cocaine. The offender admitted to using cocaine on both occasions. In response, that office referred the offender to an outpatient drug treatment program and verbally warned and reprimanded to offender regarding his illegal drug use. They also requested the Court be notified of the violations and on September 6, 2005, the Court approved the their request to take no action at that time for the violations of using cocaine.

In October 2005, the defendant was evacuated from New Orleans due to Hurricane Katrina. He spent several days in the Superdome in New Orleans and then was taken to Texas, Arizona, and Washington, where he then was able to travel to Anchorage, Alaska. On October 25, 2005, he reported to this office. On November 2, 2005, the defendant report employment in Anchorage. On November 4, 2005, the Court ordered the defendant's conditions modified to provided for additional drug testing under U.S. v. Stephens (as the defendant was now being supervised in the 9th Circuit). On November 12, 2005, the offender was arrested by the Anchorage Police Department for Driving while Intoxicated (DWI) after his blood alcohol level was determined to be .118 grams of alcohol per 210 liters of breath. On November 14, 2005, the offender reported

his arrest to the probation officer. That same day, the offender was scheduled for an assessment at the Salvation Army Clithroe Center for substance abuse treatment. On November 16, 2005, the offender gave a urine sample, which tested negative for the presence of any illegal drugs. On November 17, 2005, the offender's DWI was reported to the Court with the recommendation that no court action be taken at that time. The Court concurred.

On November 22, 2005, the offender missed an appointment at the Salvation Army Clithroe Center (SACC) for a substance abuse evaluation. On November 23, 2005, the offender was confronted about the missed appointments and stated that he had not gotten a message left for him on his home telephone and that he could not find his cellular telephone. His appointment was rescheduled.

On December 1, 2005, the offender failed to report for urine testing. The offender was contacted and claimed that he was unable to contact the probation office's system regarding drug testing. The offender was re-instructed on the operation of the drug testing call-in system.

On December 5, 2005, the offender failed to report for urine testing. On December 6, 2005, the offender was contacted and instructed to report to the probation officer for urine testing. The offender reported and provided a urine sample, which tested positive for the presence of cocaine. The officer admitted to using cocaine on the prior Saturday (December 3, 2005) and Monday (December 5, 2005). The defendant advised that he believes he is using cocaine as he is suffering from stress at home (Upon his arrival in Alaska, the offender has been living with his ex-wife) and expressed a desire to "talk to somebody."

On December 6, 2005, the Court, with the consent of the defendant, modified the defendant's conditions to include a condition for mental health treatment.

On December 6, 2005, the defendant submitted a urine sample at the probation office that tested positive for cocaine. The defendant stated that he had gotten "thrown out of his house" and gotten "high."

On December 7, 2005, the defendant was seen at his residence and was advised that he would soon be scheduled to see a mental health specialist.

On December 14, 2005, the defendant pled guilty to the above-mentioned DWI and was sentenced to four days in the Cordova Center and a fine.

On December 20, 2005, the defendant was referred to the Center for Men and Women for mental health treatment.

On December 21, 2005, a report was sent to the Court detailing recent violations of the defendant but seeking no court action. The Court concurred.

On January 2, 2006, the defendant missed his first appointment at the Center for Men and Women.

On January 9, 2006, the defendant was assessed by a therapist at the Center for Men and Women and among the recommendations was that the offender be referred for medication.

On January 12, 2006, the probation officer received the diagnosis of the therapist indicating that the defendant had met the criteria for "Cocaine and Alcohol Abuse, Adjustment Disorder, and Conduct Disorder. In addition he meets the criteria for Bipolar I Disorder though more investigation is needed to confirm this diagnosis."

On January 20, 2006, the defendant missed a scheduled urine test at the probation office.

On January 24, 2006, the defendant called the probation officer and stated that he had missed his last urine test due to a trip to the emergency room. The defendant advised that he would provide paperwork indicating that he was indeed at the emergency room. Thus far the defendant has not provided any such verification.

On January 24, 2006, SACC contacted the probation officer to indicate that the defendant had not yet re-scheduled an intake interview.

On January 24, 2006, the probation officer spoke to the defendant's mental health therapist and was informed that he had been referred to Anchorage Neighborhood Health Clinic for a "mood stabilizer."

On January 27, 2006, the defendant had his assessment with SACC and was recommended for outpatient treatment.

On January 30, 2006, SACC contacted the probation officer and indicated that the defendant had yet to pick up his "packet" in order to begin the substance abuse treatment. That same day the probation officer spoke to the defendant, who requested a different drug treatment program as he couldn't "handle" the counselor to whom he had been assigned.

On January 31, 2006, the probation officer received a call from the Center for Men and Women indicating that the subject had been seen the night before, was in crisis, and "just barely hanging on." On that same day, the probation officer received a call from the defendant's employer, who indicated that he defendant had been fired that day. Finally, on January 31, 2006, the probation officer contacted the defendant, who was extremely upset and crying and advising that he didn't want to go to jail. The defendant admitted to using cocaine the night before and was told to report to the probation office prior to 5:00 p.m. The defendant reported to the probation office and agreed that his "life was out of control" and agreed to go to the Community Corrections Center (CCC) for a period of 120 days, with release for work and treatment. The defendant, who found placement at the Merrill Field Inn as a hurricane survivor, was instructed to report to the probation office daily while arrangements are made for placement into the CCC. The defendant was advised that his placement could happen anytime, as the paperwork was being rushed to the Court and the Bureau of Prisons.

On February 1, 2006, the defendant reported to the probation office and provided a urine specimen, which tested positive for the presence of cocaine.

On February 2, 2006, at approximately 3:00 p.m., the probation officer traveled to the Merrill Field Inn and knocked loudly on the door to Room 105 with no response. A "Do Not Disturb" sign was handing on the door knob. The manager was contacted and indicated that the subject was likely in the room as the white Lexus, license DPX 709, he had been driving was in the parking lot. At about 4:55 p.m., the defendant reported to the probation office and provided a urine specimen, which tested positive for the presence of cocaine.

On February 3, 2006, at the probation officer spoke to the defendant via telephone and the defendant stated that he must have been sleeping soundly in his room at the time the probation officer was there on the previous day at 3:00 p.m.. The defendant was informed that the placement in the halfway house was nearly complete and the defendant agreed to contact the probation officer at 4:00 to see if he had to report to the halfway house or not. At 3:50 p.m., the probation officer contacted the offender and instructed him to report to the halfway house by 6:00 p.m. The offender stated that he would not comply with that instruction. The probation officer informed the offender that he was absolutely to report by 6:00 p.m., as his recent cocaine use made it very likely that he would continue to use throughout the weekend. The offender continued to refuse to commit to reporting to the halfway house stating that he was not ready, had to call his mother, had to get clothes together, and was helping a friend move. The defendant was reminded several times that he had the past three days to prepare to report to the halfway house and by his own words was sleeping in his hotel room at 3:00 p.m. the previous day. The probation officer gave one final instruction for the defendant to report to the CCC no later than 6:00 p.m. that day.

On February 4, 2006, the probation officer contacted the Cordova Center Security Desk and was advised that the defendant had not reported to the Cordova Center by 6:00 p.m. the previous day as instructed but that he had called them at 8:00 p.m., sounding "wasted," and telling them that his "PO" had given him until 9:00 p.m. to report. As of 12:00 noon on Saturday, February 4, 2006, the defendant had not reported to the Cordova Center as instructed.

On February 6, 2006, a Petition for Warrant was filed alleging 7 violations of supervised release which were use of cocaine (5), commit new crime (DWI), and failure to follow the instructions of the probation officer.

On March 7, 2006, the Court sentenced the offender to 8 months imprisonment and 2 years supervised release (with 90 days in the halfway house) after admissions to all the violations except for failure to follow the instructions of the probation officer.

On October 6, 2006, the offender was released to the halfway house. The offender resided there until January 6, 2007, when he was released to a residence in Anchorage.

On January 12, 2007, the offender was visited at his residence.

On January 16, 2007, the probation officer received information that the offender was no longer residing at his release residence and was likely using drugs. That same day, the offender left the probation officer two unintelligible voice mail messages. Attempts to contact him were negative, as his cell phone mailbox was full.

On January 17, 2007, the offender was contacted at his residence. The offender was seen arriving in a Checker Taxi Cab that let him out a half block from his residence. The offender then walked up the street to the residence where he was met by probation officers. The offender was taken into a back bedroom where he was found to be in possession of $140 cash in $20 bills. The offender stated that he got the money from a girl named Mary (last name unknown) who calls him from time to time to give him money. The offender could not provide Mary's telephone number. Also in the offender's possession were the phone numbers for "Red" (Thurman Reed) and "Buck" (Franklin Humm), who the offender admitted calling on occasion. Both Reed and Humm are federal felons the subject met in the halfway house. The offender also had a business card for the Spenard Motel. Subject said that he had been staying at various places including hotels and that he had used cocaine the previous Friday night/Saturday morning. The offender gave a urine specimen, which tested positive for cocaine and methamphetamine and explained that he has a slow metabolism and that was why he was still positive. The offender was to stay at his residence that evening and be in the probation office at 10:00 the next morning (1/18/07). The offender discounted his drug use saying that he was "doing good" when compared to an earlier time when he was "shooting" drugs and that if he was to really "go off," he would be like Gilbert Dugaqua (a former roommate of his in the CCC, who began using drugs and subsequently robbed five banks) and that there would be "guns a blazing."

On January 18, 2007 in the early morning hours, the offender was arrested by the Anchorage Police Department for Family Violence and Domestic Assault. These charges are pending.

Executed this 18th day of January, at Anchorage, Alaska, Alaska, in conformance with the provisions of 28 U.S.C. § 1746.

I declare, under penalty of perjury, that the foregoing is true and correct, except those matters stated upon information and belief, and as to those matters, I believe them to be true.

**REDACTED SIGNATURE**

Chris Liedike
U.S. Probation Officer